UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARTIN MICHAEL FERGUS, | CASE NO. 5:18CV1510 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| ANDREW M. SAUL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION & ORDER |
| Defendant. | |

Plaintiff Martin Michael Fergus ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, Plaintiff asserts that the administrative law judge ("ALJ") failed to: (1) properly evaluate the opinions of his treating physician and (2) failed to fulfill her duty to develop the record and obtain a medical opinion concerning Plaintiff's mental impairments in order to properly determine his mental residual functional capacity ("RFC"). ECF Dkt. #14. For the following reasons, the Court REVERSES the decision of the ALJ and REMANDS Plaintiff's case to the ALJ for reevaluation and analysis of Dr. Chen's opinion.

## I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on July 20, 2015 and September 30, 2015, respectively, alleging disability beginning June 24, 2015 due to hydrocephalus. ECF Dkt. #10 ("Tr.") at 11, 171-198, 235.[2] The Social Security Administration ("SSA") denied his applications initially and upon reconsideration. *Id.* at 101-115. Plaintiff requested a hearing before an ALJ, and

---

[1]On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

the ALJ held a hearing on August 8, 2017, where Plaintiff was represented by counsel and testified. *Id*. at 81, 116-123. A vocational expert ("VE") also testified. *Id.*

On November 16, 2017, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Tr. at 11-19. Plaintiff requested that the Appeals Council review of the ALJ's decision and the Appeals Council denied his request for review on May 2, 2018. *Id*. at 1-4, 168.

On July 3, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. He filed a merits brief on November 7, 2018 and Defendant filed a merits brief on February 4, 2019. ECF Dkt. #s 14, 17. Plaintiff filed a reply brief on February 18, 2019. ECF Dkt. #18.

## II.    RELEVANT PORTIONS OF ALJ'S DECISION

On November 16, 2017, the ALJ issued a decision finding that Plaintiff had not engaged in substantial gainful activity since June 24, 2015, the alleged onset date, and since that date, Plaintiff had the severe impairments of: hydrocephalus[3]-status post ventriculoatrial shunt placement with shunt revisions surgeries and valve replacement; seizures; ocular misalignment/diplopia; and loss of peripheral visual fields. Tr. at 13. The ALJ determined that Plaintiff's reported memory problems/cognitive difficulties/reports of confusion were not medically determinable impairments and did not last for 12 or more months, and showed mostly normal physical and mental status examinations, along with a normal awake EEG study. *Id.* at 14. She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Subpart P, Appendix 1. *Id.* After considering the record, the ALJ found that Plaintiff had the RFC to perform light work with the following limitations: occasional lifting/carrying, including upward pulling up to 20 pounds; frequently lifting and/or carrying, including upward pulling 10 pounds; standing and/or walking, with normal breaks for a total of 6 hours in an 8-hour workday; sitting, with normal breaks, for about 6 hours in an 8-

---

[3] "Hydrocephalus is the buildup of fluid in the cavities (ventricles) deep within the brain. The excess fluid increases the size of the ventricles and puts pressure on the brain. Cerebrospinal fluid normally flows through the ventricles and bathes the brain and spinal column. But the pressure of too much cerebrospinal fluid associated with hydrocephalus can damage brain tissues and cause a range of impairments in brain function." Mayo Clinic, Hydrocephalus, https://www.mayoclinic.org/diseases-conditions/ hydrocephalus/symptoms-causes/svc-20373604.

hour workday; pushing and/or pulling, including the operation of hand/foot controls, is unlimited, other than as shown for lifting and/or carrying; occasional climbing of stairs and ramps; never climbing ladders, ropes or scaffolds; unlimited balancing, stooping, kneeling, crouching or crawling; occasional depth perception; no workplace hazards, including work around unprotected heights or operating on or around dangerous machinery; and no manipulative or communicative limitations. *Id.* at 15.

Based upon Plaintiff's age, education, work experience, the RFC, and the VE's testimony, the ALJ determined that Plaintiff can perform his past relevant work as a management trainee and manager of a retail store. Tr. at 18. In conclusion, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, and he was not entitled to DIB or SSI from June 24, 2015, through the of the ALJ's decision. *Id.* at 19.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, *see* 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## V. LAW AND ANALYSIS

### A. TREATING PHYSICIAN OPINION

Plaintiff first asserts that substantial evidence does not support the ALJ's RFC for him because she violated the treating physician rule as to the opinion of his treating physician, Dr. Chen.

-4-

ECF Dkt. #14 at 11-14. For the following reasons, the undersigned recommends that the Court find that the ALJ failed to provide good reasons for affording less than controlling weight and only little weight to Dr. Chen's opinion.

An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, she must provide "good reasons"[4] for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL

---

[4] The Court notes that the SSA has changed the treating physician rule effective March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence." Https://www.ssa.gov. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

-5-

1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

Further, state agency consultants are highly qualified specialists and experts in Social Security disability evaluation. Social Security Ruling ("SSR") 96–6P, 1996 WL 374180. The regulations require that "[u]nless the treating physician's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 404.1527. The ALJ must consider factors such as the examining relationship, the treatment relationship, supportability, consistency, specialization, and other factors in evaluating every medical opinion, unless a treating source's opinion is given controlling weight. 20 C.F.R. § 404.1527(c).

However, an ALJ is not required to explain why he or she favored one examining opinion over another as the "good reasons" rule requiring an ALJ to explain the weight afforded a treating physician's opinion does not apply. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006). Moreover, ALJs are not bound by the findings of a state agency psychologist, "but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p.

In the instant case, Dr. Chen completed an "Abilities and Limitations for Self-Sufficiency" form concerning Plaintiff on November 9, 2016 for the Portage, Ohio Job & Family Services. Tr. at 507. He identified Plaintiff's diagnoses as chronic pulmonary obstructive disease ("COPD") and AV shunt hydrocephalus, and he indicated that Plaintiff's prognosis was poor. *Id*. In describing Plaintiff's functional limitations, Dr. Chen handwrote that Plaintiff could not remember or focus well and he felt dizzy when standing or walking. *Id*. He opined that Plaintiff could stand/walk from 2 ½ hours to 4 hours on a sustained basis and he could sit for 4 ½ hours to 6 hours on a sustained basis. *Id*. He further opined that Plaintiff could alternate standing/walking/sitting for 4 ½ hours to 6 hours on a sustained basis and he could perform simple grasping and fine manipulation. *Id*. Dr. Chen additionally opined that Plaintiff could lift less than 10 pounds, he was not able to remember work locations or procedures, carry out instructions, maintain attention/concentration, perform activities within a schedule, sustain an ordinary routine, or interact with the general public. *Id*. On the part of the form stating "Patient is released for:" Dr. Chen left open both "yes" and "no" for full time employment, training/GED, Portage County WEP Program, and he checkmarked the "no" box for releasing Plaintiff for part-time employment and basic hands-on stationary work only. *Id.*

In the ALJ's decision, she addressed Dr. Chen's opinion and indicated that she attributed it no controlling weight and only little weight. Tr. at 19. She found that his opinion was inconsistent with the medical records as a whole, including Plaintiff's "reported dizziness and other symptoms that have not lasted for 12 or more months at a time to meet the durational requirements of the Social Security Act, his generally benign diagnostic test results and clinical findings, and his ability to engage in vigorous daily activities such as going on walks, playing outside with his son, driving, cooking, and gardening. [citations omitted]. Finally, Dr. Chen provided little supporting evidence for his extreme limitations aside from largely restating the claimant's diagnoses and subjective allegations, which are not fully consistent with the record for the reasons listed above." *Id*. The ALJ further reasoned that Dr. Chen's opinion that Plaintiff could not even perform part-time work was an issue reserved to her as the ALJ, and "was not a specific statement of functional abilities." *Id*.

Plaintiff contends that the ALJ's reasons for affording less than controlling weight to Dr. Chen's opinion are not supported by substantial evidence because she incorrectly found that Dr.

Chen failed to specifically state Plaintiff's functional abilities, she mischaracterized the record, and she otherwise failed to analyze the proper factors in determining the weight to grant to Dr. Chen's opinion. ECF Dkt. #14 at 12-14. Defendant counters that the ALJ provided several good reasons for attributing less than controlling weight to Dr. Chen's opinion and substantial evidence supports those reasons. ECF Dkt. #17 at 12-13.

The Court finds that the ALJ has failed to sufficiently articulate good reasons for attributing less than controlling weight to Dr. Chen's opinion. Defendant correctly points out that the ALJ properly attributed no special significance to Dr. Chen's statement that Plaintiff could perform only part-time work because the inability to work is an issue reserved to the ALJ. Tr. at 18; ECF Dkt. #17 a 13; 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3). Defendant also correctly points out that Plaintiff has generalized the ALJ's finding that Dr. Chen did not set forth a specific statement of Plaintiff's functional abilities. ECF Dkt. #17 at 13. In addressing Dr. Chen's opinion that Plaintiff could not perform even part-time work, the ALJ not only explained that this was an issue reserved to the ALJ, but she also reasoned that "this was not a specific statement of functional abilities." Tr. at 18. The ALJ did not find that Dr. Chen's overall opinion lacked a specific statement of Plaintiff's functional abilities, as interpreted by Plaintiff. Rather, the ALJ indicated this as a second reason for not crediting Dr. Chen's opinion concerning Plaintiff's inability to perform even part-time work.

Nevertheless, the Court finds that the ALJ has failed to sufficiently articulate her reasons for affording less than controlling weight to Dr. Chen's opinion and substantial evidence does not support her decision to do so. In addressing Dr. Chen's opinion, the ALJ reasoned that Dr. Chen's "opinions are inconsistent with the medical record as a whole, including the claimant's reported dizziness and other symptoms that have not lasted for 12 or more months at a time to meet the durational requirements of the Social Security Act, his generally benign test results and clinical findings, and his ability to engage in vigorous daily activities such as going on walks, playing outside with his son, driving, cooking, and gardening. (Exhibit 9F, pg.3; 14F, pg.2 hearing testimony)." Tr. at 18. The ALJ also found that Dr. Chen provided little evidence in support of his extreme limitations, aside from merely restating Plaintiff's diagnoses and subjective allegations,

which were not consistent with the records for the reasons that she indicated that she already gave. *Id.*

As to the ALJ's finding concerning Plaintiff's dizziness and other symptoms not meeting the 12-month durational requirement, the Court finds that this reason is not supported by the record. The ALJ cited to Plaintiff's testimony that he cannot work primarily due to his symptoms from hydrocephalus and numerous shunt placement and revision surgeries for shunt infections and dysfunctions. Tr. at 15. Plaintiff testified that his symptoms included numbness and tingling on the left side of his body, vision problems such as double vision and a drifting left eye, headaches, dizziness and memory issues. *Id*. at 44, 49-50. The ALJ reviewed Plaintiff's medical history, including his history of hydrocephalus, with status post ventriculoatral shunt placement, shunt revision surgeries and valve replacement, seizures, ocular misalignment/diplopia, and loss of peripheral visual fields. *Id*. at 16. She noted Plaintiff's left ventriculoatrial shunt revision due to shunt failure in December of 2014, a left ventriculoatrial shunt removal due to failure on April 21, 2015 with placement of a left occipital ventriculoatrial drain, an April 29, 2015 left-sided ventriculoatrial shunt insertion for a shunt infection, and a June 29, 2015 left-sided ventriculoatrial shunt revision due to shunt malfunction. *Id*. at 16, citing Tr. at 640-648.

However, the medical record also shows that on May 27, 2015, Plaintiff followed up with Dr. Chen after his surgery and Dr. Chen noted that Plaintiff was still reporting double vision. Tr. at 423. Further, on July 11, 2016, Plaintiff reported headaches and dizziness, and his active problems included AV shunt malfunction, diplopia, loss of peripheral visual field, and hydrocephalus. *Id.* at 420. The ALJ herself noted that Plaintiff underwent a CT scan of his head in February of 2017 and in March of 2017 due to headaches. Tr. at 16, citing Tr. at 627. July 17, 2017 treatment notes from ophthalmologist Dr. Morgan indicated that Plaintiff presented to him for headaches, diplopia, and ocular misalignment. *Id*. at 617. A review of Plaintiff's neurological symptoms on that date indicated that Plaintiff complained of daily dizziness and numbness on the left side of his body. *Id*. at 618. Upon testing and review of Plaintiff's medical records, Dr. Morgan indicated that Plaintiff had evidence of extropia and left hypertropia, with the extropia likely related to Plaintiff's hydrocephalus with different vertical measurements that a prior ophthalmologist had

-9-

found in the past. *Id*. at 620. Dr. Morgan opined that Plaintiff's vertical misalignment reflects left cranial nerve 4 palsy with spread of comitance. *Id*. He discussed a short term prism along with a longer term strabismus surgery. *Id*. The ALJ also cited to Dr. Chen's July 26, 2017 treatment notes indicating that Plaintiff presented to him with complaints of headaches, dizziness, memory loss, and left-sided weakness. *Id*. at 17, citing Tr. at 543-545. Based upon the record and the ALJ's own recitation of Plaintiff's medical history, Plaintiff's symptoms have indeed lasted longer than the 12-month durational requirement.

The Court also finds that the ALJ's reliance upon Plaintiff's "ability to engage in vigorous daily activities" is not a good reason to discredit Dr. Chen's opinion. The ALJ found that Plaintiff's testimony belied Dr. Chen's extreme limitations for him because Plaintiff testified that he goes on walks, plays outside with his son, drives, cooks and maintains a small garden. Tr. at 18. However, "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637 F.2d 968, 971 (3rd Cir. 1981). Sporadic or transitory activity does not disprove disability. *Id*. Further, while Plaintiff testified in the instant case that he engages in the activities identified by the ALJ, he also testified that he has to rest or stop and sit when walking and playing with his son due to severe headaches and he often plans activities later in the day because the sun bothers his eyes and causes the daily headaches to become more severe. *Id.* at 52-53. He explained that in order to help the daily headaches resolve, he has to find somewhere away from light and noise and close his eyes and sit with his head elevated for an hour or two. *Id*. at 55. He indicated that when he plays with his son and gets a headache, he has to go into the house and his son comes in and plays while he rests. *Id*. at 56. Plaintiff testified that he is not able to work through the headaches and his doctors are not looking into headache clinics for help because they think that it is all related to his hydrocephalus and they are trying to take care of that first. *Id*. at 61. He also described his left eye problems, indicating that his ophthalmologist indicated that in the future, after the hydrocephalus is under control, he will have to have surgery to sever his fourth optic nerve and connect it to another one to help with the double vision and his eye wandering. *Id*. at 54.

The ALJ also relied upon Plaintiff's "generally benign diagnostic test results and clinical findings" in attributing less than controlling weight to Dr. Chen's opinion. Tr. at 18. Although some of the diagnostic results and clinical examination findings were relatively normal, the medical record also revealed that Plaintiff was admitted to the hospital from April 21, 2015 through May 1, 2015 due to worsening headaches, confusion, fatigue and blurred vision. *Id.* at 378. A CT scan showed acute moderate to severe hydrocephalus and bilateral VP shunts, fluid collection at the abdominal catheter, and evidence of an enlarged ventricle with a decline in clinical examination. *Id.* at 382. Plaintiff underwent a left-sided ventriculoperitoneal shunt removal due to shunt failure and a left occipital ventricular drain was placed. *Id.* On June 24, 2015, Plaintiff presented to the emergency room with worsening of headaches and double vision and physical examination revealed some nystagmus in the right eye, worse on elevation and right lateral gaze. *Id.* at 393-395. Plaintiff underwent a ventriculoatrial shunt malfunction revision on June 29, 2015. *Id.* at 400. A July 14, 2015 CT of the head showed asymmetric brain parenchymal volume loss along the medial left occipital lobe. *Id.* at 633. In addition, when Plaintiff presented to his neurosurgeon on May 6, 2016 for complaints of forgetfulness, confusion, headaches and dizziness, clinical examination showed that Plaintiff had a very unsteady gait, he was off-balance, and dysmetria. *Id.* at 454. Dr. Sweet sent Plaintiff to the emergency room for his symptoms. *Id.* Thus, while there were some relatively normal findings and objective test results, there were also abnormal results which were not analyzed by the ALJ in conjunction with her findings here to justify this as a reason for affording less than controlling weight to Dr. Chen's opinion.

The ALJ's final reason for attributing less than controlling weight to Dr. Chen's opinion is her finding that Dr. Chen provided little supporting evidence to support his extreme limitations for Plaintiff, "aside from restating the claimant's diagnoses and subjective allegations, which are not fully consistent with the record for the reasons listed above." Tr. at 18. It appears that on the opinion form completed by Dr. Chen, he does not provide much in the way of clinical or diagnostic evidence. *Id.* at 507. He does indicate Plaintiff's diagnoses, opines his prognosis as poor, and indicates that Plaintiff could not remember well and he felt dizzy upon standing and walking. *Id.* However, the opinion form does not request that Dr. Chen provide clinical findings or other

objective medical evidence to support his opinion. Moreover, even if this single reason by the ALJ is a valid reason, it is not sufficient by itself for attributing less than controlling weight to Dr. Chen's opinion, especially when the ALJ fails to provide analysis of Dr. Chen's treatment notes, referrals to specialists, and other records which provide contrary findings to that of the ALJ.

In addition, and even if the ALJ's sole reason for affording less than controlling weight to Dr. Chen's opinion constitutes a good reason, it is an insufficient explanation for attributing only little weight to Dr. Chen's opinion. If an ALJ declines to give controlling weight to the opinion of a treating source, she must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544, citing 20 C.F.R. § 404.1527(c). An ALJ is not required to discuss every factor in 20 C.F.R. § 404.1527(c). In this case, the ALJ has failed to adequately address the factors justifying her decision to give only little weight to Dr. Chen's opinion, such as indications that he considered the length of the treatment relationship, Dr. Chen's frequent examinations of Plaintiff, his numerous referrals to specialists for Plaintiff, and sufficient analysis of the supportability and consistency of his opinion with the record as a whole. The ALJ fails to adequately explain why only little weight, as opposed to great weight or some weight, was attributed to Dr. Chen's opinion.

For these reasons, the Court finds that the ALJ has failed to adequately articulate her reasons for affording less than controlling, and only little weight, to the opinion of Dr. Chen. The Court is not finding that Dr. Chen's opinion is entitled to controlling weight; rather, the Court remands this case in order for the ALJ to reevaluate Dr. Chen's opinion and more fully explain the reasons for the weight that the ALJ affords to that opinion.

### B.     MENTAL RFC

Plaintiff also asserts that the ALJ erred by finding that his mental impairments were not severe and by not properly determining his mental RFC as to his memory loss and concentration issues associated with his hydrocephalus. ECF Dkt. #14 at 14-16. In light of the Court's remand

of this case for reevaluation and more thorough analysis of Dr. Chen's opinion, the Court declines to address the ALJ's failure to provide a mental RFC for Plaintiff because the ALJ's re-evaluation and analysis on remand may impact her findings on this issue in the remaining steps of the sequential evaluation. *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 417 (6th Cir. 2011).

## VI. CONCLUSION

For the above reasons, the Court REVERSES the decision of the ALJ and REMANDS Plaintiff's case for reevaluation and proper analysis concerning the opinion of Dr. Chen.

Date: September 27, 2019	/s/George J. Limbert
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE